UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VICTOR AMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-289-B-W |
| | ) |
| DEPARTMENT OF MARINE RESOURCES | ) |
| COMMISSIONER, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**
**(Doc. Nos. 12, 41, 42, & 43)**

The plaintiff in this action, Victor Ames, is a self-described "lifelong resident of the Island of Matinicus, and a licensed lobster fisherman, who has been disabled due to a heart condition since September 2005." (Compl. ¶ 4.) He has named twenty-three defendants, essentially complaining that they conspired against him to exclude him from harvesting in the Matinicus waters, converted his lobster traps, and confiscated his fishing gear. Paragraph 10 of the complaint alleges:

> "The Matinicus Island Fishermen[']s Group" (sometimes herein referred to as "the Group,"[)] is a collusive combination and conspiratorial group of fisherman who either reside on or claim exclusive rights to the Group to fish in the waters off Matinicus Island and at all times material hereto have acted under the tacit or express protection of the State Defendants. "

(Compl. ¶ 10.) Also relevant to the present motion, Paragraph 35 describes the following confrontation:

> On about May 26, 2006, Frankie Thompson, while tending the Plaintiff's Lobster traps in "Hurricane Sound," was surrounded by several lobster fishing boats and lobstermen from the Matinicus Island Fishermen's Group" and advised by Defendants' Lavon "Biscuit" Ames, Dennis Young, and several others of the Group, that if he were to be found in "Matinicus Waters" again that they would "destroy all his gear on

>Vinalhaven Island, and anywhere else, if he ever came to Matinicus Island again ... "and that "(W)e haven't decided what we are going to do with Victor Ames yet."

(Compl. ¶ 35.) Ames further alleges that on June 13, 2006, one of the defendants, Joseph Bray, shot at him while Ames was out tending his traps.[1]

There are eight counts in Ames's complaint, three of which are brought pursuant to the United States Constitution and five of which are state law claims. In this recommended decision I address a motion to dismiss filed by Robert Young (Doc. No. 41) and I recommend the court deny the motion.

## *Discussion*

With respect to specific mention of Robert Young, Paragraph 9 of Ames's complaint alleges: "Defendant Robert Young has a residence on Matinicus Island, County of Knox and at times material hereto has acted as part of the Matinicus Island Fisherman's Group and has confirmed the continuing nature of the conspiracy alleged herein." (Compl. ¶ 9.) And Paragraph 73 avers: "In June 2007, Defendant Robert Young of Matinicus Island, County of Knox advised David Ames, age 16, that if Victor Ames went to Matinicus he would be 'coming back on the bottom of the ocean.'" Id. ¶ 73. Notably, this alleged statement was made approximately a year after the two confrontations described above.

Robert Young's motion rises and falls on this court's application of the Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) pleading standard. In Twombly the United States Supreme Court explained: "Federal Rule of

---

[1] In Paragraph 91 of the complaint, not cited by Ames in his response to the motion to dismiss as being one of the paragraphs pertaining to Robert Young's liability, Ames alleges apropos his assault count that all the named defendants and co-conspirators were armed, and with the exception of the State defendants, were prepared to kill Ames. (Compl. ¶ 91.)

Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" 127 S.Ct at 1964 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). Furthermore:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, <u>ibid</u>.; <u>Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.</u>, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). <u>Factual allegations must be enough to raise a right to relief above the speculative level</u>, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), <u>see</u>, e.g., <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508, n. 1 (2002); <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

127 S. Ct. at 1964 -65 (footnote omitted, emphasis added). "In applying these general standards to a § 1 [Sherman Act] claim," the Supreme Court held "that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for <u>plausible grounds to infer an agreement</u> does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." <u>Id.</u> at 1965 (footnote omitted, emphasis added).

In his motion to dismiss Robert Young frames the question as being "whether the complaint makes out a claim for some form of joint or vicarious liability." (Mot. Dismiss

3

at 3.)  He asserts: "The complaint does not present factual allegations on this issue, but legal assertions of conspiracy, collusion and agency relationships among defendants. Conclusory allegations unsupported by facts need not be accepted as true, and do not properly state a claim upon which relief can be granted."  (Id.)  Robert Young explains:

> Plaintiff does not allege that Robert Young was present at or participated in any meetings alleged to have had the purpose of excluding Plaintiff from harvesting lobsters in the vicinity of Matinicus Island. Plaintiff does not allege that Robert Young was part of any confrontation with Plaintiff's associate, Frankie Thompson. Plaintiff does not allege that Robert Young harmed, converted or received any of Plaintiff's property. Plaintiff does not allege that Robert Young played any role in the shooting incident. There are no dates, places, statements, actions or other facts alleged in the complaint to show that Robert Young endorsed or agreed upon any such course of action.
> 	The complaint similarly lacks any specific allegation that Robert Young took any action that would otherwise bind him to torts allegedly committed by other defendants.
> 	Plaintiff failed to allege any facts showing that Robert Young formed any agreement with others to commit a tort against Plaintiff and that such tort was committed.

(Id. at 4.)

In addition to Paragraphs 9, 10, 35, and 73 set forth above, in his response to the motion to dismiss Ames cites to a handful of paragraphs of his complaint that, although they do not specifically name Robert Young, are key to his theory of liability apropos him.  These are:

> 36. On or about June 4, 2006, being the first Sunday in June, in the Old School Building on Matinicus Island , in one of several meetings with members of Defednant [sic] Lapointe the Group, Defendants George Lapointe, Joseph Fessenden, Marlowe Sonksen, and Robert Beal, on behalf of the Maine Department of Marine Resources, met with the Matinicus Island Fishermen's Group to discuss the exclusion of various individuals from fishing in the Matinicus waters, and jointly agreed and conspired that certain individuals, including Plaintiff, would be excluded from fishing in Matinicus waters.

4

> 37. Any individual who was opposed to the "cutting of lobster traps" was excluded from the meeting by the Group and its leaders because opposition was not tolerated.
> ….
> 39. Shortly after the confrontation with Thompson in early May 2006, and after the meeting of June 4, 2006 at the Old School House, at the request of the Matinicus Island Fishermen's Group, the State Defendants Sonksen and Beal, on information with the knowledge of State Defendant Fessenden and Defendant Lapointe, caused the Plaintiff's lobster traps to be tagged[.]
> ….
> 44. Members of the Matinicus Island Fishermen's Group have admitted in the presence of others attending the June 4, 2006 meeting held in the Matinicus Island Old School Building; have admitted att[e]nding the June 11, 2006 meeting; have admitted molesting lobster traps; have admitted being part of a collusive action and conspiracy to deny persons not members of the Group to fish Matinicus waters; and to cutting the Plaintiff's traps and confiscating Plaintiff's fishing gear.
> ….
> 48. On June 11, 2006, the Matinicus Island Fishermen's Group held a second meeting, this time at the Old School Building, at which Defendants Marlowe Sonksen and Robert Beal were in attendance, and where, under the direction of Defendants Lavon Biscuit Ames III and Ira Tad Miller, it was decided that the members of the Group would keep guns on their boats, lying in wait for Plaintiff Victor Ames.

(Compl. ¶¶ 36, 37, 39, 44, 48.)[2]

To get a flavor of his insistence that the complaint allegations are insufficient to state a claim against him, in his reply memorandum Robert Young complains vis-à-vis the constitutional claims:

> Plaintiff … alleges that Robert Young conspired with state actors to interfere with Plaintiff's constitutional rights. Aside from questions as to what constitutional dimension there is to any of this, the complaint again lacks any specific allegation that either Robert Young acted individually in concert with state officials, or was a member of an entity through which liability may be imposed on passive members.
> Plaintiff's response states that "each Defendant, including Robert Young, had the intention to complete the groups [sic] decision to kill the Plaintiff Victor Ames on the high seas." This highly inflammatory and

---

[2]   In his specific discussion of the Maine state law claims in Counts Four, Five, Six, and Seven Ames also cites to Paragraphs 41, 42 and 43. With regards to his state law Counts Eight and Nine Ames references Paragraphs 34 and 38.

> preposterous language, as to Robert Young, is not in the complaint, either explicitly or by any clear implication.
> In the absence of some legally recognized entity on which to impose collective liability, it is not sufficient to simply name a bushel of defendants and then follow with allegations that some unidentified number of them engaged in tortious conduct. The complaint is insufficient because it does not allege what Robert Young did either as a direct actor, or in support of others.

(Reply Mem. at 5-6.)

The application of the Twombly pleading standard to these conspiracy-premised federal civil rights and state law counts, see Bean v. Cummings, 2008 ME 18, ¶ 11, 939 A.2d 676, 680 (identifying Twombly as providing valuable assistance in addressing Maine Rules 8(a) and 9(b) disputes), is not clear sailing. The majority view among federal courts nation-wide is that Twombly is not limited to Sherman Act anti-trust cases but that its message of identifying a non-speculative, 'plausible basis' for relief in the complaint allegations as to each defendant must be tailored to the theories of liability at issue in the case. See, e.g., Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (trademark action); Phillips v. County of Allegheny, 515 F.3d 224, 230 -235 (3d Cir. 2008) (42 U.S.C. § 1983 state-created danger claim).

With regard to those cases addressing non-Sherman Act conspiracy claims, almost always in unpublished decisions, courts have required more than conclusory allegations of conspiracy to justify proceeding against a named defendant. There are a handful of such decisions at the Circuit Court of Appeals level. For instance, the District of Columbia Court of Appeals affirmed dismissal of a bar applicant's RICO conspiracy claim, noting that the "allegations include no facts suggesting 'unity of purpose' or a 'meeting of the minds' among the defendants, a necessary element of a conspiracy." Rodriguez v. Editor in Chief, Legal Times, No-07-5234, 759, 2008 WL 2661993, 2

(D.C Cir. July 02, 2008) (unpublished decision) (citing Twombly and Kreuzer v. Am. Academy of Periodontology, 735 F.2d 1479, 1487 (D.C.Cir.1984)).

The Fourth Circuit addressed claims that the defendant/appellees conspired to violate the plaintiffs'/appellants' substantive due process, equal protection, First Amendment, and Fourth Amendment rights and stressed, citing Twombly, that the plaintiffs/appellants:

> needed to plead facts that would "reasonably lead to the inference that Appellees positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," Hinkle [v. City of Clarksburg], 81 F.3d [416,] 421 [(4th Cir.1996)]. The complaint makes the bare, conclusory allegation that the defendants conspired to violate his constitutional rights and that the conspiracy culminated in the fabricated testimony. No common purpose is alleged and nothing beyond conclusory allegations of conspiracy are made.

Ruttenberg v. Jones, No. 07-1037, 2008 WL 2436157, 8 (4th Cir. June 17, 2008) (unpublished decision). The Panel affirmed dismissal of the 42 U.S.C. § 1983 conspiracy claims. Id.

And in Patton v. West the Tenth Circuit opined:

> Plaintiff's complaint claimed entitlement to damages under 42 U.S.C. §§ 1983, 1985, and 1986, for violation of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and included claims under the Americans with Disabilities Act and various other constitutional provisions. … The plaintiffs' claim in Twombly failed because the actions they complained of were not "placed in a context that raises a suggestion of a preceding agreement." Id. at 1966. The challenged action could just as easily have been evidence of independent conduct free from any illegal agreement. Id. So too here. Plaintiff's allegations of conspiracy fail to raise any suggestion of a preceding agreement among defendants to deprive her of her rights. She advanced no allegation "plausibly suggesting" an improper agreement. See id."

No. 07-4154, 2008 WL 1844078, 1 (10th Cir. Apr. 25, 2008) (unpublished decision).

7

With respect to the many private citizens that Ames has named as defendants to this action and contends are subject to 42 U.S.C. § 1983 liability on his federal civil rights counts, Ames has the additional burden of pleading a sufficient conspiracy between these private citizens and the state actor defendants. The Tenth Circuit's <u>Ellibee v. Fox</u> addressed this dynamic under <u>Twombly</u>:

> We recognize the inherent difficulty of producing direct evidence of a conspiracy and therefore proceed with caution in considering the pretrial dismissal of [a § 1983 complaint against former counsel]. See <u>Fisher v. Shamburg</u>, 624 F.2d 156, 162 (10th Cir.1980). At the same time, however, we have held that "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." <u>Sooner Products Co. v. McBride</u>, 708 F.2d 510, 512 (10th Cir.1983). … While Mr. Ellibee's amended complaint contains extensive allegations, he does not present any facts establishing an agreement or meeting of the minds between Ms. Fox and the state actors to deprive him of any federal rights. Thus, he failed to state a § 1983 claim against Ms. Fox.

No. 06-3382, 2007 WL 1776347, 3 (10th Cir. June 21, 2007) (unpublished decision).

These unpublished Court of Appeals cases discussed above do not really make the task of ruling on Robert Young's motion to dismiss clear cut. In my view, when push comes to shove, Robert Young, as the movant, has not carried his burden of convincing the court that he is entitled to judgment under the <u>Twombly</u> standard:

> <u>Twombly</u> was concerned with the plausibility of an inference of conspiracy, not with the plausibility of a claim. A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears 'that a recovery is very remote and unlikely,' " <u>Id.</u> at 1965 (quoting <u>Scheuer</u>); a complaint "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations," <u>id</u>. at 1969 n. 8.".

Aktieselskabet AF 21. November 2001, 525 F.3d at 17. Nothing in this conclusion about this movant's failure to carry his burden is meant to imply that I find that Counts One through Three necessarily state a claim under 42 U.S.C. § 1983. Robert Young has moved for his dismissal from the entire complaint, and under the Twombly standard I am not persuaded the claims against him can be dismissed in their entirety at this juncture.

With regards to the state law counts, Robert Young cites to Cohen v. Bowdoin, 288 A.2d 106 (Me. 1972) and Potter, Prescott, Jamieson & Nelson v. Campbell, 1998 ME 70, 708 A.2d 283, 286. See also Fiacco v. Sigma Alpha Epsilon Fraternity, 484 F.Supp.2d 158, 176 (D. Me. 2007). However, this line of Maine cases on civil conspiracy stands for the proposition that you cannot have a freestanding/free wheeling civil conspiracy claim. Ames has not pled such a count. With regards to his state law counts there must be an underlying tort vis-à-vis which conspiracy liability can adhere. Robert Young has not claimed that these state law counts fail to state a claim that a tort was committed by any of the named defendants; he simply stands on his claim that there are insufficient factual allegations to tie him in as a conspirator.

So, while I recommend denying Robert Young's motion to dismiss in its entirety, I add the following observations. As the complaint currently stands, the allegations tying Robert Young to the specific actions underlying the theories of liability in this case do appear "remote and unlikely." Scheuer, 416 U.S. at 236. Ames's response to the motion to dismiss does not shed a great deal of light on how he envisions factually supporting his theories of liability as to Robert Young. This case is racking up docket entries at a quick rate, multiple defendants have filed separate answers, and Ames, although already faced with four motions to dismiss for failure to state a claim, has not attempted to amend his

9

complaint to respond to any of the alleged deficiencies for some of these 'outlying' defendants.  For his part, Robert Young had the right to file a motion for a more definite statement which would have given the Court an opportunity to better weigh the current issue of the adequacy of Ames's case for holding Young liable as a conspirator.  Ames has now insisted in his response to the motion to dismiss that he has a good faith basis for naming Robert Young as a defendant that extends beyond his residency on Matinicus Island, his membership in a group of fishermen, and a statement he made almost one year after the events giving rise to the claims in the complaint.  Young could have responded to this complaint by invoking Rule 12(e) of the Federal Rules of Civil Procedure and seeking a more definite statement, but he chose not to do so.  Instead, Young filed an omnibus motion to dismiss providing only skeletal legal argument.  Ames has responded to the motion by pointing the court to various paragraphs of the complaint that he claims encompass Robert Young's actions.  I am simply not convinced that the complaint in its entirety fails to state <u>any</u> claim against Young upon which relief could be granted, most especially as it relates it counts eight and nine of the complaint.

  Two of the other named defendants, John Mitchell and Edwin Mitchell, have jointly filed a motion to dismiss.  (Doc. No. 12.)   Two other defendants, Clayton Philbrook and Troy Ames have each filed separate motions to dismiss.  (Doc. Nos. 42 & 43.)  The allegations of Ames's complaint that mention these four defendants by name are as follows:

> Defendant Troy Ames of  Ash Point, and Matinicus Island, County of Knox and State of Maine, was at all times material hereto, engaged in the lobster fishing industry on Matinicus Island, County of Knox and State of Maine, and as a member of the Matinicus Island fishermen's Group was a self-appointed agent and enforcer of the Group's decisions.

>   Defendant Edwin Mitchell of Matinicus Island, County of Knox and State of Maine, was at all times material hereto, engaged in the lobster fishing industry on Matinicus Island, County of Knox and State of Maine, and as a member of the Matinicus Island fishermen's Group was a self-appointed agent to convert the Plaintiff's personal property to his own use.[3]
>
>   Defendant John Mitchell of Matinicus Island, County of Knox and State of Maine, was at all times material hereto, engaged in the lobster fishing industry on Matinicus Island, County of Knox and State of Maine, and as an active, voting member of the Matinicus Island fishermen's Group was a self-appointed enforcer of that Group's decisions.
>
>   Defendant Clayton Philbrook of Matinicus Island, County of Knox and State of Maine, was at all times material hereto, engaged in the lobster fishing industry on Matinicus Island, County of Knox and State of Maine, and as a member of the Matinicus Island fishermen's Group was a self-appointed enforcer of that Group's decisions.

(Compl. ¶¶ 19, 22, 23, 24)

These defendants' arguments for dismissal are also premised on Twombly. The allegations as to all four defendants are strikingly similar to each other and to the allegations against Robert Young. These four defendants differ from Robert Young only in that the complaint makes no mention of any statements they may have made almost a year after the operative events that Ames maintains give rise to liability. In response to these motions Ames essentially makes much the same arguments he made in response to Young's motion, only in an even more skeletal fashion. Once more the defendants have filed omnibus motions to dismiss, seeking their complete dismissal from the lawsuit, rather than individually parsing each federal and state law count. And once more I am

---

[3] It is unclear why Edwin Mitchell is described in terms of converting plaintiff's property to his own use rather than merely as a self-appointed enforcer of the Group's decisions as the other three are described. There are no factual assertions in the complaint pertaining uniquely to Edwin Mitchell, although some defendants, other than the four addressed in this recommended decision, are alleged to have committed certain discrete acts. It is also unclear why Troy Ames and Edwin Mitchell are described as "agents" of the Group and the other two are merely members, albeit John Mitchell is further described as "an active voting member." The point is, these paragraphs are the sum total of the allegations pertaining to these four individuals. There are no allegations as to any specific "vote" ever taken by the Group.

confronted with a close call regarding the Twombly plausible inference test in terms of the legal theories undergirding this alleged conspiracy, at least as to certain of the counts of the complaint. Because I do not believe that the single allegation pertaining to Young's statement in 2007 puts him in a measurably different position than these four defendants, I conclude that these motions to dismiss should likewise be denied for the same reasons as set forth above.

## Conclusion

Based upon the foregoing, I recommend the court deny these motions to dismiss.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 19, 2008