```
                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MAINE
VICTOR AMES,                        )
                                    )
        Plaintiff,                  )
                                    )
v.                                  ) Civil No. 8-289-B-H
                                    )
DEPARTMENT OF MARINE RESOURCES      )
COMMISSIONER, et al.,               )
                                    )
        Defendants
```

### ORDER ON MOTIONS FOR A MORE DEFINITE STATEMENT
### (Doc. Nos. 109, 110, 113, 114, 115)

Victor Ames, a resident of the Island of Matinicus, is a licensed lobster fisherman. He has filed a civil law suit and in his amended complaint he has named twenty-three defendants, insisting that they conspired against him to exclude him from harvesting in the Matinicus waters, converted his lobster traps, and confiscated his fishing gear. Paragraph 10 of the amended complaint alleges:

> "The Matinicus Island Fishermens Group" (sometimes herein referred to as "the Group[]"[)] is an association of fisherman who claim ancestral rights to fish in the delineated lobster rich waters of Matinicus Waters by reason of land ownership, tax paying on land ownership, and by relationship to the Island inhabitants, and is a collusive combination and conspiratorial group of fisherman all of whom claim exclusive rights to the Group to fish in the waters off Matinicus Island and all of whom at all times material hereto have acted under the tacit or express protection of the State Defendants.

(Am. Compl. ¶ 10.) When compared to the previous Paragraph 10, plaintiff's counsel seems to be approaching this as a creative writing exercise rather than as an amendment that adds substance to his claim.

Also relevant to the present motion, Paragraph 37 (once 35) of the amended complaint describes the following confrontation:

>       On about May 26, 2006, Frankie Thompson, while tending the
> Plaintiff's Lobster traps in "Hurricane Sound," was surrounded by several
> lobster fishing boats and lobstermen from the Matinicus Island
> Fishermen's Group and advised by Defendants Lavon "Biscuit" Ames,
> Dennis Young, and several others of the Group, that if he were to be found
> in "Matinicus Waters" again that they would "destroy all his gear on
> Vinalhaven Island, and anywhere else, if he ever came to Matinicus Island
> again ... "and that "(W)e haven't decided what we are going to do with
> Victor Ames yet." (Sometimes referred to herein as "the Hurricane Island
> incident.")

(Am. Compl. ¶ 37.)[1]

Pending are five motions for a more definite statement. Three of the motions are filed by the same defense counsel on behalf of Troy Ames (Doc. No. 113), Clayton Philbrook (Doc. No. 114), and Robert Young (Doc. No. 115). These motions/memoranda are brief and substantially identical. Victor Ames has filed a consolidated response to these motions. (Doc. No. 122.) One of the motions is filed on behalf of three defendants: Ira Miller, Julie Miller, and Jamie Keizer (Doc. No. 110 ) regarding which Victor Ames has filed an opposition (Doc. No. 124). And Vance Bunker has filed a motion (Doc. No. 109), which Victor Ames has opposed (Doc. No, 123), and Bunker has filed a reply (Doc. No. 129).

## Discussion

I addressed in an earlier recommended decision a motion to dismiss by Defendant Robert Young.[2] Therein I indicated:

>       So, while I recommend denying Robert Young's motion to dismiss
> in its entirety, I add the following observations. As the complaint currently
> stands, the allegations tying Robert Young to the specific actions
> underlying the theories of liability in this case do appear "remote and
> unlikely." Scheuer, 416 U.S. at 236. Ames's response to the motion to

---

[1] Ames further alleges that on June 13, 2006, one of the defendants, Joseph Bray, shot at him while Ames was out tending his traps. (Am. Complaint ¶ 60.)

[2] Defendants Troy Ames and Clayton Philbrook also moved for dismissal and this order addressed their motions as well.

2

> dismiss does not shed a great deal of light on how he envisions factually supporting his theories of liability as to Robert Young. This case is racking up docket entries at a quick rate, multiple defendants have filed separate answers, and Ames, although already faced with four motions to dismiss for failure to state a claim, has not attempted to amend his complaint to respond to any of the alleged deficiencies for some of these 'outlying' defendants. For his part, Robert Young had the right to file a motion for a more definite statement which would have given the Court an opportunity to better weigh the current issue of the adequacy of Ames's case for holding Young liable as a conspirator. Ames has now insisted in his response to the motion to dismiss that he has a good faith basis for naming Robert Young as a defendant that extends beyond his residency on Matinicus Island, his membership in a group of fishermen, and a statement he made almost one year after the events giving rise to the claims in the complaint. Young could have responded to this complaint by invoking Rule 12(e) of the Federal Rules of Civil Procedure and seeking a more definite statement, but he chose not to do so. Instead, Young filed an omnibus motion to dismiss providing only skeletal legal argument. Ames has responded to the motion by pointing the court to various paragraphs of the complaint that he claims encompass Robert Young's actions. I am simply not convinced that the complaint in its entirety fails to state *any* claim against Young upon which relief could be granted, most especially as it relates it counts eight and nine of the complaint.

<u>Ames v. Dept. of Marine Resources Comm'r</u>, Civ. No. 08-289-B-H, 2008 WL 5050159, 6 (D.Me. Nov. 19, 2008)(recommended decision), <u>aff'd</u>, Doc. No. 99 ("The Complaint has now been amended so any issue about a more definite statement needs to be addressed in the context of the Amended Complaint. Counsel should confer among themselves and with the Magistrate Judge about how to schedule further proceedings.").

Federal Rules of Civil Procedure Rule 12(e) provides:

> **Motion for a More Definite Statement.** A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

Counter to Ames's insistence that these motions are wolves dressed in sheep's clothing in that they are really backdoor discovery attempts,[3] the First Circuit has indicated that in appropriate circumstances Rule 12(e) motions are an acceptable way of managing complaints such as this. See Jordan v. Carter, 428 F.3d 67, 75 (1st Cir. 2005); LaLonde v. Textron, Inc., 369 F.3d 1, 6 n. 10 (1st Cir. 2004); Mihos v. Swift, 358 F.3d 91, 106 & n.12 (1st Cir. 2004).

**The Motions**

A.     **Motion by Defendant Vance Bunker (Doc. No. 109)**

Vance Bunker's motion for a more definite statement characterizes the complaint and amended complaints as the kind of  "shot gun pleadings" addressed by the Eleventh Circuit in Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001),  Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001), and Wagner v. First Horizon Pharmaceutical Corporation, 464 F.3d 1273, 1279 (11th Cir. 2006).  "Here, Bunker argues, "Plaintiff not only makes numerous vague allegations against multiple defendants, he fails to tie such allegations to the legal claims set forth in the Amended Complaint."  (Bunker Mot. at 2.)

Bunker points out that the only reference to Vance Bunker in the amended complaint appears in Paragraph 28, which alleges:

> Defendant Vance Bunker of Matinicus Island, County of Knox, and State of Maine, was at all times material hereto, engaged in the lobster fishing industry on Matinicus Island, County of Knox and State of Maine, and as an active voting member of the Matinicus Island Fishermen's Group, was a self-appointed enforcer of that Group's decisions, and who cut Plaintiff's lobster traps, and who conspired with other Group members to destroy Plaintiff's livelihood and property.

---

[3]     Just as defendants cannot use Rule 12(e) motions as a short run around discovery, a plaintiff such as Ames cannot file complaints naming countless defendants as a fishing expedition; plaintiffs must have a good faith basis for drawing each defendant into civil litigation. See, e.g. Fed. R. Civ. P. 11(b).

4

(Am. Compl. ¶ 28.)  With respect to Paragraphs 10, 35, 38, and 39 which contain allegations about the "Matinicus Island Fishermen's Group," Bunker stresses:  "None of Plaintiff's allegations … identify which Defendants participated in what meetings, discussions, actions, or threats." (Bunker Mot. at 4.)  Bunker maintains that the defendants "are left to guess not only whether such allegations relate to them, or not, but also whether the subsequent legal claims relate to one or more of the vague factual allegations."  (Id.) He insists that as to him the amended complaint "is so vague or ambiguous" he cannot "reasonably be required to frame a meaningful responsive pleading."  (Id.)[4]  Bunker specifically requests a more definite statement as to the allegations in Paragraphs 10, 36, 37, 38, 39, 30, 41, 43, 44, 46, 47, 50, 52, 53 (first paragraph), 55, 66, and 72, asking Ames to set

> forth which Defendants are members of "The Matinicus Island Fisherman's Group" and the basis for such belief (Paragraph 10); which Defendants conspired with Julie Miller "to get the Plaintiff" (Paragraph 36); which Defendants attended the alleged meetings which constituted part of the conspiracy alleged by Plaintiff (Paragraphs 38, 39, 50, 52,); which Defendants "objected to Victor Ames having any assistant who had no real estate or tie in with the Group's approval on Matinicus Island" (Paragraph 35); which Defendants participated in the so-called "Hurricane Island Incident" (Paragraph 37) and "would not allow [Plaintiff] to have [the] assistance of Thompson" (Paragraph 43); which Defendants requested that the "State Defendants" "tagged" Plaintiff's lobster traps (Paragraph 41); which Defendants "cut, molested, destroyed or converted" Plaintiff's lobster traps (Paragraph 44); which Defendants made admissions and the substance of such admissions (Paragraph 46); which Defendants were allegedly threatened by Plaintiff (Paragraph 47); which Defendants were advised by Sgt. Sonksen that it was legal for them to carry firearms on their boats (the first paragraph 53); which Defendants State Defendant Beal is alleged to have called on June 13, 2006 (Paragraph 55); and, which Defendant is alleged to have made the statement "shoot him in the fucking head" (Paragraph 66).

---

[4]  Bunker filed an answer to the initial complaint pro se. (See Doc. No. 15.)

(Id. at 5-6.) Bunker points out that Victor Ames has asserted six claims – Counts 3, 4, 6, 7, 8, and 9 – against Bunker. (Id. at 6.) With regards to Count 9, Bunker insists that it does not satisfy the Federal Rule of Civil Procedure 9(b) pleading requirement for claims of fraud. (Id. at 8.) Bunker also points out that Ames "has failed to provide any facts establishing a nexus between Defendant Bunker and the State Defendants that would establish 'an agreement or meeting of the minds'" with regards to the state actor component of his 42 U.S.C. § 1983 claims. (Id. at 7.)

In response, Victor Ames portrays his amended complaint as tightening up of his averments and clarifying "much if not all of what Justice [sic] Hornby presumably referred to." (Pl.'s Resp. at 1; see also id. at 2.) He characterizes Bunker's motion as "a not very thinly veiled Discovery Motion." (Id.) While citing (irregularly) many lower court decisions from all over the country,[5] Ames argues that the Eleventh Circuit cases addressing the problem of shotgun pleadings are not binding in the First Circuit. (Id. at 2.) Ames opines, "Defendant Bunker further moves that Plaintiff be ordered to provide a more definite statement as to how the factual allegations specifically support each of Plaintiff's legal claims. Isn't this called 'discovery'? Does Defendant Bunker want to review the Plaintiff's entire file to show how the factual allegations specifically support each of Plaintiff's legal claims?" (Id. at 3-4.)

In his reply memorandum, Bunker points out that Federal Rule of Civil Procedure 12(e) "specifically authorizes" motions for a more definite statement (Reply. Mem. at 1);

---

[5] For instance, Ames cites a 1945 Western District of Missouri case for the proposition that "[motions for more definite statements are no longer favorites of the law." (Pl.'s Resp. at 3)(emphasis added). See Agricultural Lands v. Panhandle & S. F. Ry. Co., 60 F.Supp. 108, 110 (D.C. MO. 1945) ("However, bills of particular are no longer favorites of the law. The same might be said of motions for more definite statement. The information sought can be obtained under the several rules of discovery, and by such proceeding Rule 8 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, can be maintained in accordance with the intention of the rule-makers.").

argues that the amended complaint actually removed factual detail and, if anything, made the complaint less specific (id. at 2); and that Ames's response fails to address the Rule 9(b) concern regarding pleading fraud (id. at 3).

**B.    Motion by Defendants Ira Miller, Julie Miller, and Jamie Keizer (Doc. No. 110)**

Defendants Ira Miller, Julie Miller, and Jamie Keizer join in a motion for a more definite statement. They maintain that the amended complaint is so vague and ambiguous that they cannot reasonably prepare a response. (I. Miller, J. Miller & Keizer Mot. at 1.) They argue that "the amended complaint amounts to a bare assertion of conspiracy" without sufficient "factual matter." (Id. at 2.) Ames, they opine, essentially alleges generally that everyone did everything. He makes no attempt to establish who did what by using the names of individuals instead of referring to a group, such as 'the Matinicus Fisherman' (¶ 41) or 'the Matinicus Island Fisherman Group' (¶ 42)." (Id.) "Of particular concern" to these three defendants "are the allegations of paragraph 36 in which it is generically alleged that Julie Mil[l]er 'conspired with other members of the Matinicus Island Fishermen's Group to get the plaintiff.'" (Id.) "This is an example," they state "of both failing to identify individuals and also of a purely conclusory averment unsupported by a link between fact and end result." (Id.)

With regards to what these defendants envision Ames doing to remedy the perceived deficiencies in the complaint, they urge that rather than standing on Paragraph 10, Ames "should be required to identify with particularity the entire membership of the allegedly conspiring group and set forth sufficient facts upon which he believes such a group existed." (Id. at 2-3.)   Furthermore, in their view,

>   Where meetings of the group are alleged to have taken place, the plaintiff should be required to state when exactly they occurred and who the participants were. (Paragraphs 38, 39, 50, 52) Where specific acts, events and incidents are alleged, the identity of those participating or present, whether defendants or otherwise, should be set out. (Paragraphs 35, 36, 37, 41, 43, 44 46, 47, 53, 55, 56 and 76). Any acts or events described should be fact specific and the plaintiff should be required to demonstrate how the facts, once stated, result in the legal conclusion alleged (Paragraph 72).

(Id. at 3.)

Ames's response is as follows:

>   The Defendants complain about the defects of the Complaint, including the request for a list of "the full membership", and "who was present at the meetings", and the details of paragraph numbered 36 relating to Julie Miller who "conspired with other members of the Matinicus Island Fishermen's Group to get the Plaintiff". It is accepted, however, that a Motion for a More Definite Statement is granted sparingly since it is not to be used as a substitute for discovery in trial preparation...but is to be used only when a pleading is too general." Town of Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F.Supp.126, 135 (D. N.H., 1984) Rule 12(e) motions are designed to "strike at unintelligibility, rather than at lack of detail in the complaint." Cox, 122 F.R.D. at 116.
>   It is more than concerning that the Defendants' are asking to identify with "particularity the entire membership of the allegedly conspiring group, and set forth sufficient facts upon which he believes such a group exists or existed." Is this being used as a substitute for discovery? See Town of Hooksett Sch.Dist. v.W.R.Grace & Co.[,] 617 F.Supp. 126, 135 (D. N.H. 1984). Do the details of the "membership list" make the Complaint more "intelligible"? Rule 12(e) motions are designed to strike at unintelligibility, rather than at lack of detail in the complaint. Woods v. Reno Commodities, Inc., 600 F. Supp. 574 (D. Nev.1984).

(Pl.'s Resp. at 3, Doc. No. 124.)

### C.  Motions by Defendants Troy Ames (Doc. No. 113), Clayton Philbrook (Doc. No. 114), and Robert Young (Doc. No. 115)

#### 1.  Defendants' Arguments

The motions filed by Troy Ames, Clayton Philbrook, and Robert Young have in common the disclaimer that they cannot be held liable for the alleged wrongdoings on the

8

complaint as pled. With regards to Ames and Philbrook, they seek details as to how they might be tied to:

> a. Any alleged communication or interaction between this Defendant and Defendants George Lapointe, Marlowe Sonksen, Robert Beal or Brian Tolman;
> b. Any acts by this Defendant in furtherance of a conspiracy with Defendants Lapointe, Sonksen, Beal or Tolman;
> c. Any acts by this Defendant in furtherance of a conspiracy with Defendants other than Lapointe, Sonksen, Beal or Tolman;
> d. Defendant's expressions of assent or approval of the acts of other Defendants;
> e. Defendant's participation or presence in any confrontation with Plaintiff or Frank Thompson;
> f. Defendant's participation or presence in any acts wherein Plaintiff's property was damaged or converted;
> g. Any economic distinction between lobsters caught near Matinicus island and any other Maine lobsters;
> h. Any economic distinction between the sale or marketing of lobsters caught near Matinicus and any other Maine lobsters;
> i. Any economic distinction between harvesting lobsters near Matinicus and any other fishing grounds.

(Doc. Nos. 113 & 114.)

With regards to Robert Young, he includes all the above listed paragraphs and the following additional two paragraphs:

> d. Dates, times and places of any meetings Defendant attended;
> e. Defendant's conduct at any particular meeting[.]

(Doc. No. 115 .)

All three defendants argue:

> Where conspiracy and antitrust violations are alleged, the preparation of a defense requires some notice as to this Defendant's acts in direct or indirect furtherance of the conspiracy, statements or other conduct, presence or participation that entitle Plaintiff to relief. As to the antitrust claim, Defendant cannot respond where there are no foundational facts as to the scope of the market or the market-wide, anticompetitive effects of Defendant's conduct.

(Doc. Nos. 113, 114, 115.)

### a.     *Troy Ames*

Troy Ames argues that Victor Ames has not alleged facts that he assented to or endorsed the tortious conduct of other defendants or "showing foundational requirements for an antitrust action." (T. Ames's Mot. at 3.)  He opines:

> Plaintiff does not allege that Troy Ames voted to exclude Plaintiff from harvesting lobsters in the vicinity of Matinicus Island. Plaintiff does not allege that Troy Ames was part of any confrontation with Plaintiff's associate, Frankie Thompson. Plaintiff does not allege that Troy Ames harmed, converted or received any of Plaintiff's property. Plaintiff does not allege that Troy Ames played any role in the shooting incident. There are no dates, places, statements, actions or other facts alleged in the complaint to show that Troy Ames endorsed or agreed upon any such course of action.
>
> The complaint similarly lacks any specific allegation that Troy Ames took any action that would otherwise bind him to torts allegedly committed by other defendants.

(Id. at 3-4.)

### b.     *Clayton Philbrook*

Philbrook also argues that Ames has alleged no facts showing individual action by him or assent or endorsement of tortious conduct by other defendants. (Philbrook Mot. at 4.)  He further argues that Ames has alleged no facts showing foundational requirements for an antitrust action. (Id.) He asserts:

> Plaintiff does not allege that Clayton Philbrook voted to exclude Plaintiff from harvesting lobsters in the vicinity of Matinicus Island. Plaintiff does not allege that Clayton Philbrook harmed, converted or received any of Plaintiff's property. Plaintiff does not allege that Clayton Philbrook played any role in the shooting incident. There are no dates, places, statements, actions or other facts alleged in the complaint to show that Clayton Philbrook endorsed or agreed upon any such course of action.

(Id.  at 4-5.)

### c.     *Robert Young*

For his part Robert Young argues:

> The complaint alleges that Robert Young "acted as part of the Matinicus Island Fisherman's Group and has confirmed the continuing nature of the conspiracy alleged herein." (Amended complaint, at paragraph 9).
> Plaintiff's last paragraph under "facts" alleges that Robert Young made a threatening remark concerning Plaintiff to a third party. (Amended Complaint, at paragraph 73).
> Those two paragraphs of the complaint are the sole allegations identifying Robert Young.
> Plaintiff has alleged no facts showing individual action by Robert Young or assent or endorsement of tortious conduct by other defendants.
> Plaintiff has alleged no facts showing foundational requirements for an antitrust action.
> ….
> Plaintiff does not allege that Robert Young was present at or participated in any meetings alleged to have had the purpose of excluding Plaintiff from harvesting lobsters in the vicinity of Matinicus Island. Plaintiff does not allege that Robert Young was part of any confrontation with Plaintiff's associate, Frankie Thompson. Plaintiff does not allege that Robert Young harmed, converted or received any of Plaintiff's property.
> Plaintiff does not allege that Robert Young played any role in the shooting incident. There are no dates, places, statements, actions or other facts alleged in the complaint to show that Robert Young endorsed or agreed upon any such course of action.
> The complaint similarly lacks any specific allegation that Robert Young took any action that would otherwise bind him to torts allegedly committed by other defendants.

(Young Mot. at 4-5.)

   2.   *Victor Ames's Consolidated Response*

Victor Ames responds to these three motions by arguing that these defendants are attempting to use Federal Rule of Civil Procedure 12(e) as a means of discovery in contravention to the purpose for the rule. (Pl.'s Resp. at 1-2.) Ames maintains:

> Defendants argue that "[I]f details are necessary in order to make a vague complaint intelligible, the fact that the details also are subject to the discovery process should not preclude their production under Rule 12(e)." 5 C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure ("Wright & Miller") § 1376, at 322, 325 (3 rd ed. 2004). While this may be so, the conclusion does not transform the Motion for More Definite Statement into a pretrial "discovery" Motion, requiring fact

11

> pleading, e.g. details of "Defendant's conduct at any particular meeting."
> To require such pleadings would sabotage the "liberal pleading
> requirements under the Federal Rules. Hilchey [v. City of Haverhill], 233
> F.R.D. [67,]69 [(D. Mass. 2005)]; see Cox [v. Me. Mar. Acad.], 122
> F.R.D. [115,]116 [(D. Me. 1988)].
>       In consideration of the fact that the initial complaint was answered
> by the Defendants, with full knowledge of the averments, and that only a
> few, at that, clarifying changes have been made in the Amended
> Complaint, the Defendants contention that they need to know items such
> as "this Defendant's acts in direct or indirect furtherance of the
> conspiracy, statements or other conduct, presence or participation that
> entitle Plaintiff to relief" to respond is unsupportable.

(Id. at 3.)

### The Resolution

I agree with the defendants that the amendments to the complaint do little to impact this analysis as to the moving parties. The motion to amend indicated:

> Defendant Victor Ames moves to amend his complaint to restate
> Averments in paragraphs 36 to 38 of his Complaint. These amendments
> delete averments which further investigation after Answer by the State of
> Maine Defendants, based on information currently available, cannot in
> their entirety and detail, be maintained as based on reasonable grounds.
> The Amendment does not affect earlier Motions to Dismiss or Orders on
> those Motions to Plaintiff's best knowledge and does not affect the
> gravamen or substance of the Complaint. If anything the amendments
> benefit the Defendants and should not prejudice any Defendant.

(Mot. Amend at 1, Doc. No. 87.) The express purpose of the amendment is not targeted at firming up the complaint as it pertains to these defendants. Paragraphs 36 through 38 of the initial complaint alleged:

> 36. On or about June 4, 2006, being the first Sunday in June, in the
> Old School Building on Matinicus Island, in one of several meetings with
> members of Defendant Lapointe the Group, Defendants George Lapointe,
> Joseph Fessenden, Marlowe Sonksen, and Robert Beal, on behalf of the
> Maine Department of Marine Resources, met with the Matinicus Island
> Fishermen's Group to discuss the exclusion of various individuals from
> fishing in the Matinicus waters, and jointly agreed and conspired that
> certain individuals, including Plaintiff, would be excluded from fishing in
> Matinicus waters.

> 37. Any individual who was opposed to the "cutting of lobster traps" was excluded from the meeting by the Group and its leaders because opposition was not tolerated.
> 38. The June 4, 2006, meeting held at the Old School Building on Matinicus Island, County of Knox and State of Maine, was held with the aim and intention of excluding the Plaintiff, Victor Ames, as well as other people to be voted on, including one Lee Watkinson and one June Pemberton, from fishing lobster in Matinicus waters.

(Compl. ¶¶ 36-38, Doc. No. 1.)

These motions for a more definite statement and Ames's amended complaint do call upon the court to identify the threshold for granting Rule 12(e) motions and to consider the principally Eleventh Circuit criticism of 'shot gun' pleadings. [6] With respect to motions for a more particular statement the First Circuit has stated: "While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong." Pamel Corp. v. Puerto Rico Highway Authority, 621 F.2d 33, 36 (1st Cir. 1980) (citing Kadar Corp. v. Millbury, 549 F.2d 230, 233 (1st Cir. 1977)). In Pamel Corporation the Panel observed that, "[t]he most glaring defect" was that the complaint concerning zoning restrictions failed "to connect the defendant with the wrongs alleged to have been suffered." Id.

With respect to the characterization of this amended complaint as 'shot gun' the amended complaint lists nine causes of action while targeting so many private defendants with the same scatter shot of factual allegations.

In one response Ames queries: "Do the details of the 'membership list' make the Complaint more 'intelligible'?" It certainly does if you have been dragged into this suit

---

[6] Clearly, it is not as a rule impermissible to incorporate prior allegation paragraphs into subsequent paragraphs for efficiency sake. See, e.g., Carr v. United States, No. CV F 06-0372 LJO, 2006 WL 3355098, 5 (E.D.Cal. Nov. 17, 2006). To arise to the level of a 'shot gun' pleading the incorporation must be so wholesale that it is evident that the plaintiff made no effort to discern which defendants might fairly be held liable for which counts based on what alleged facts.

and do not know the parameters of the group of which you are alleged to be a part.  Ames really has not advanced a sound reason why he cannot provide these movants with allegations that satisfy their request.  And with respect to Ames's insistence that the defendants have been or are able to frame an answer, 'shot gun' complaints lead to 'shot gun' answers which do nothing to narrow the points of contention between the parties. See Byrne v. Nezhat, 261 F.3d 1075, 1129 -30 (11th Cir. 2001).

In Destfino v. Kennedy the court described the mortgage and car loan fraud complaint as "a prime example of a variation of shotgun pleading" as the plaintiffs argued in their Rule 12(b)(6)/12(e) pleadings and alleged in their First Amended complaint "that every defendant did the exact same conduct and said the exact same misrepresentations." No. CV-F-08-1269 LJO DLB, 2009 WL 63566, 6 (E.D. Cal. Jan 8, 2009).  Noting that the "plaintiffs' very allegations belie the possibility of such similarity of conduct", the court stated: "Such pleading is not only unhelpful and poorly drafted, but, as admonished by the Eleventh Circuit, should be avoided because '[e]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'" Id. (quoting Anderson v. Dist. Bd. of Trustees of Cent. Florida Community College, 77 F.3d 364, 367 (11th Cir.1996)); id. at 7 ("The pleadings do not specifically identify which defendant engaged in what in the fraudulent schemes.").

With respect to all the moving defendants, this amended complaint relies on "bald assertions," Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004), and vague and conclusory allegations, see Tarabolski v. Town of Sharon, No.

14

95-1382, 1995 WL 670989, 1 (1st Cir. Nov. 13, 1995) (Per Curiam)(unpublished)("The allegations against the selectmen, the Town, and the fire department officials were vague and conclusory. Given Tarabolski's unwillingness to elucidate, and the apparent lack of merit to his claims, we think the district court acted within its discretion in dismissing the claims against these defendants."); see also cf. Papas v. Baines, No. 92-1381, 1992 WL 369917, 3 -4 (1st Cir. Dec. 16, 1992) (Per Curiam) (unpublished).

In Educadores Puertorriquenos en Accion, the First Circuit explained the impact of Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) on its heightened pleading standard:

> We hasten to add that the demise of our traditional heightened pleading standard does not leave either government officials or district courts at the mercy of overly aggressive plaintiffs. The Court itself has pointed the way: "[g]iven the wide variety of civil rights and 'constitutional tort' claims that trial judges confront, broad discretion in the management of the factfinding process may be more useful and equitable to all the parties than [categorical rules imposed by the appellate courts]." Crawford-El [v. Britton], 523 U.S. [574,] 600-01 [(1998)]. To lend credibility to this statement, the Court has taken pains to assure its audience that a number of alternatives are available to aid trial courts in early detection of potentially meritless claims. See Swierkiewicz, 534 U.S. at 514; Crawford-El, 523 U.S. at 598-600; Leatherman [v. Tarrant County Narcotics Intell. & Coord. Unit], 507 U.S. [163,] 168-69 [(1993)]. A trial court may, for example, order the plaintiff to reply to the defendant's answer to the complaint, see Fed.R.Civ.P. 7(a); grant the defendant's request for a more definite statement, see Fed.R.Civ.P. 12(e); or tailor discovery narrowly to protect the defendant from "annoyance, embarrassment, oppression, or undue burden," Fed.R.Civ.P. 26(c). In extreme cases, a court may protect public officials from harassment either by sanctioning plaintiffs who file papers that are lacking in factual support, see Fed.R.Civ.P. 11…

367 F.3d at 67; see also Gilbert v. Chertoff, No. Civ. 05CV2128 (RJL), 2006 WL 2793169, 2 -3  (D.D.C. Sept. 28, 2006) ("[T]he court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive

15

causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment.").

As noted above, part of the spirit behind the 'shot gun' pleading caution is not only the fact that certain defendants are forced to respond to the allegations of the complaint without any clarity as to the portions of the complaint that target them. These type of complaints tax the court. But the same can be said for unwarranted motions for a more definite statement. As this court has already addressed several motions to dismiss, this opinion should not be taken as an invitation to other defendants to file similar motions for a more definite statement;[7] defendants are urged to use common sense and restraint when asking the court for consideration of such motions with an eye towards moving this action forward to a resolution.

My conclusion after weighing all of these considerations, is that four of five these motions for a more definite statement are GRANTED in Part. (Doc. No. 109, 113, 114, and 115). While plaintiff is not required to specify all of the details requested (such as the entire membership of the Group which could legitimately be a subject for discovery and might have been pled as John/Jane Does), he is required to specify, as to each of the moving parties, what individual facts unique to each defendant, other than residence on Matinicus Island and a connection to the lobster fishing industry, provide a nexus between the legal claims in the amended complaint and the facts allegedly supporting them.[8] A conclusory allegation that the defendant is a member of the Fishermen's' Group is not sufficient without an explanation of the factual basis for that claim. The

---

[7] Many defendants are much more enmeshed in the allegations of the complaint and would not need to pursue such a course. Furthermore, those defendants have already answered the amended complaint

[8] As to some of the movants, such as the Millers, the complaint is peppered with factual allegations that allegedly support the legal claims.

16

plaintiff has until March 27, 2009, to file his more definite statements as to each movant. As to the remaining motion for a more definite statement (Doc. No. 110), I am satisfied these defendants are adequately apprised of the factual basis for the legal claims and the motion is DENIED.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

March 6, 2009                                                  /s/ Margaret J. Kravchuk
                                                                              U.S. Magistrate Judge